# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2176

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Appellee,　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　　*　District Court for the District of
　　　　　　　　　　　　　　　　　　*　North Dakota.
Chase Alone Iron Eyes,　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Appellant.　　　　　　　　 *

_____

Submitted:  February 12, 2004

Filed:  May 10, 2004 (Corrected: 05/12/04)

_____

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and RILEY, Circuit
　　　Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After a jury found Chase Alone Iron Eyes guilty of possessing a stolen firearm in violation of 18 U.S.C. § 922(j), the district court[1] entered judgment on the verdict, and Mr. Iron Eyes appealed.  Mr. Iron Eyes contends that the district court erred in refusing to give two jury instructions that he proffered, and in denying his motion to

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

dismiss the indictment based on governmental misconduct. For the reasons stated below, we affirm his conviction.

## I.

The police arrested Mr. Iron Eyes after observing him outside the home of Don Borud carrying two rifle cases that contained Mr. Borud's firearms. About ten minutes earlier, Mr. Borud had returned home to find part of his front door kicked in and called the police because he feared that intruders might still be inside. The police responded quickly and subdued the defendant, whom they saw peeking around the corner of the house. Mr. Iron Eyes maintains that he was heavily intoxicated and was there only to help a young woman named Nicole, whom he had recently met, move some items from the house. The police did not find any "Nicole" nor could she be located before Mr. Iron Eyes's trial, and there was evidence that no one named Nicole lived in or stored items at the Borud residence.

At trial, Mr. Iron Eyes testified that while out drinking with friends he agreed to help Nicole move some items and that he went with her to a house in what he presumed was her car. According to Mr. Iron Eyes, once they were inside the house Nicole handed him what he believed were two suitcases, and she left the house. Thirty seconds to a minute and a half later, he maintained, he left the house to find her, and the police arrested him. The two "suitcases" were actually rifle cases containing Mr. Borud's guns. The government offered evidence that the police had been observing the house for at least eight minutes and did not see anyone else near it.

## II.

A conviction under § 922(j), as relevant, requires proof that a defendant possessed a stolen firearm "knowing or having reasonable cause to believe that the firearm ... was stolen." The gist of Mr. Iron Eyes's defense at trial was that he did not think that the guns were stolen because he thought that the rifle cases were suitcases

that belonged to Nicole who had given him permission to have them. He therefore contends that the district court erred by refusing to instruct the jury on the law of mistake of fact.

A defendant is entitled to have an instruction to the jury on his or her theory of the case if sufficient evidence was introduced at trial to support the instruction and a proper request for it was made. *See United States v. Prieskorn*, 658 F.2d 631, 636 (8th Cir. 1981). A "proper request" must set forth a correct statement of the law. *Id.* Mr. Iron Eyes offered two instructions on mistake of fact: one that defined it and another that addressed the burden of proof. We address each of them in turn.

A.

The first proffered instruction stated, in part, that a "genuinely held mistake of fact may negate a required mental intent to commit a crime, even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable person." The government argues that this instruction did not correctly state the law applicable to the charge against Mr. Iron Eyes. We disagree with the government, but we hold nevertheless that it was not error in the instant circumstances to refuse the instruction.

A defendant's evidence of mistake of fact may cast doubt on whether he or she had the mental state required for the commission of a particular crime. *See United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971). The parties spent a considerable amount of space in their briefs on a supposed distinction between specific intent and general intent crimes, and on the question of whether mistake of fact is a valid defense to one type of crime but not the other. We do not think that it is necessary to engage in this logomachy, or to categorize the crime involved here, before we can resolve this case. The applicable principle is that if a defendant reasonably though mistakenly believes facts that negate the mental state necessary for conviction of the offense with which he or she has been charged, the crime simply has

-3-

not been committed.  *See United States v. Quarrell*, 310 F.3d 664, 675 (10th Cir. 2002).  In this case, Mr. Iron Eyes maintains that his subjective mistake of fact was reasonable for him because he was in an intoxicated state when he committed the acts that formed the basis of his conviction.

The statute under which Mr. Iron Eyes is charged, as we have already said, makes criminal not only the possession of guns that the defendant knew were stolen, but also the possession of guns that he had "reasonable cause to believe" were stolen. 18 U.S.C. § 922(j).  At first glance, this might appear to allow the conviction of a merely negligent defendant.  The statute can be read two ways, however:  It may be read as requiring proof only that a defendant possessed a gun that the so-called "reasonable person" would have believed was stolen in the circumstances of the case. *Cf. United States v. Prather*, 205 F.3d 1265, 1271 (11th Cir. 2000), *cert. denied*, 531 U.S. 879 (2000).  But the better reading, we believe, requires proof that a defendant possessed a gun that it would have been reasonable for him or her, in particular, to believe was stolen. *See United States v. Saffo*, 227 F.3d 1260, 1268-69 (10th Cir. 2000), *cert. denied*, 532 U.S. 974 (2001); *see also Gorin v. United States*, 312 U.S. 19, 27-28 (1941). The language of the statute itself supports this construction: It criminalizes particular activities by "any person ... having reasonable cause to believe that the firearm ... was stolen."  18 U.S.C. § 922(j).  Thus, what is relevant under the statute is whether the defendant's mistake was reasonable for him, and so Mr. Iron Eyes's proffered instruction correctly stated the law.

With respect to the scienter element of the offense, the jury was instructed that in order to convict it must find that "Iron Eyes knew or had reasonable cause to believe the firearm was stolen."  Other Courts of Appeals require that juries be specifically instructed on the definition of the words "knowingly" or "knowing" that are contained in some criminal statutes. *See*, *e.g.*, *United States v. Delgado*, 357 F.3d 1061, 1066 (9th Cir. 2004); 1-3A Modern Federal Jury Instructions - Criminal, ¶ 3A.01 (2003).  In our circuit, however, a trial judge is not required to give the jury

such a definition because the definition is "a matter of common knowledge," *see*, *e.g.*, *United States v. Brown*, 33 F.3d 1014, 1017 (8th Cir. 1994).

When a defendant presents evidence of a mistake of fact and, as here, proffers a jury instruction that accurately states the law on that issue, perhaps it might be the better practice to give the instruction to ensure that the jury understands exactly how subjective mistakes of fact can negate the mental state required for conviction. *Cf. United States v. Sinskey*, 119 F.3d 712, 715 (8th Cir. 1997); *United States v. Mercer*, 853 F.2d 630, 633 (8th Cir. 1988), *cert. denied*, 488 U.S. 996 (1988), 490 U.S. 1110 (1989). But the instruction that the trial court gave was an adequate statement of the applicable law. The jury was also instructed, moreover, that Mr. Iron Eyes's intoxication was something that could be considered "in determining whether or not [Mr. Iron Eyes] did have knowledge or a reasonable belief the firearm was stolen."

There is no requirement that a trial court "instruct with the specificity or in the language defense counsel desired," *United States v. Bartlett*, 856 F.2d 1071, 1083 (8th Cir. 1988). The instructions given, taken as a whole, adequately informed the jury about how Mr. Iron Eyes's mistake-of-fact evidence, if believed, would disprove the *mens rea* element of the crime with which he was charged. *See id.* at 1082. Mr. Iron Eyes's counsel was allowed to argue to the jury that his client thought the guns were Nicole's and that his client's intoxication rendered him incapable of knowing that he possessed stolen guns, and we are confident that the jury understood what the law was. The jury simply rejected Mr. Iron Eyes's defense on the facts.

B.

With respect to the burden-of-proof instruction, Mr. Iron Eyes's position is likewise without merit. The proffered instruction stated that the government bore the burden of proving beyond a reasonable doubt not only the elements of the crime

-5-

charged but also "as an additional element" that Mr. "Iron Eyes was not mistaken as to the facts."  That is not the law.  *See Goodwin*, 440 F.2d at 1156.

The government had the burden of proving the scienter element of the offense charged here, and if it has done that it has necessarily proved that Mr. Iron Eyes was not laboring under any mistake of fact that would render his actions innocent.  The fact that Mr. Iron Eyes testified that he was mistaken does not require the government to shoulder any additional burden.  If the government fears that evidence of mistake of fact has created a reasonable doubt about a defendant's guilt, it is certainly in its interest to present further evidence of knowledge, if it has any, to reduce the doubt.  But the jury does not have to believe a defendant's testimony and a conviction will stand if there was evidence in the record to support a finding of the elements of the crime beyond a reasonable doubt.  There was certainly sufficient evidence in this case.

### III.

Mr. Iron Eyes next argues that it was error to refuse an instruction that stated that the government must prove beyond a reasonable doubt that he was not intoxicated at the time the crime occurred.  This argument, like Mr. Iron Eyes's argument for a burden-shifting instruction with respect to mistakes of fact, lacks merit.

As we have already indicated, the trial court gave an instruction that correctly explained that "evidence that the defendant acted while under the influence of alcohol may be considered ... in determining whether or not [Mr. Iron Eyes] did in fact have knowledge or a reasonable belief the firearm was stolen."  But evidence of intoxication does not in any way change the prosecution's burden.  The prosecution still must prove only the elements of the offense, including the necessary *mens rea*, beyond a reasonable doubt.  The intoxication evidence could (but does not necessarily have to) create a reasonable doubt about whether the defendant possessed the

necessary *mens rea*.  If Mr. Iron Eyes did not possess the necessary *mens rea* because he was intoxicated, he simply did not commit the crime.  Evidence of Mr. Iron Eyes's intoxication could not and did not create an additional matter that the government had to prove beyond a reasonable doubt.

IV.

Mr. Iron Eyes also asserts that the district court erred in denying his motion to dismiss the indictment for governmental misconduct.  He argues that his due process rights were violated because the police allowed Mr. Borud to destroy evidence that could have substantiated Nicole's presence at the house.  The day after the police arrested Mr. Iron Eyes, Mr. Borud notified them that he had discovered that someone had urinated on his bed.  Mr. Borud wanted to dispose of the mattress but called the police to make sure that they did not want or need it for the trial.  The police officer told Mr. Borud to "go ahead" and dispose of it, and Mr. Borud threw the mattress away, along with the bedding, without any tests being performed on either.

A due process violation occurs whenever the government "suppresses or fails to disclose material exculpatory evidence."  *Illinois v. Fisher*, 124 S. Ct. 1200, 1202 (2004) (per curiam) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).  In contrast, "the failure to preserve ... 'potentially useful evidence' does not violate due process '*unless a criminal defendant can show bad faith on the part of the police*.' "  *Id.* (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)) (emphasis added in *Fisher*); *United States v. Boswell*, 270 F.3d 1200, 1207 (8th Cir. 2001), *cert. denied*, 535 U.S. 990 (2002).  Mr. Iron Eyes argues that the destroyed evidence was potentially useful because if tests had been conducted on it the results might have shown that a woman had been in the home.  But the record in this case shows that, at most, the police acted negligently in allowing Mr. Borud to destroy the mattress; there was no evidence of bad faith.  Mr. Iron Eyes's due process rights were thus not violated by the officers' failure to preserve the mattress and bedding.  *See Youngblood*, 488 U.S. at 57-58;

*United States v. Chandler*, 66 F.3d 1460, 1467 (8th Cir. 1995). There is no error here.

Finally, Mr. Iron Eyes argues that even if the destruction of evidence did not violate his due process rights, it was error for the district court to refuse to instruct the jury that it could draw adverse inferences from the police's acquiescence to the destruction of the mattress. We disagree. The record is insufficient in this case to support an inference that the police acted improperly in allowing the mattress to be destroyed.

IV.

We affirm the conviction for the reasons stated.

_____